UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                     Case No. 09-CR-82

COMFORT T. JOHNSON,

        Defendant.

## RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT, JR. REGARDING THE DEFENDANT'S MOTION TO SUPPRESS

**PROCEDURAL HISTORY**

On March 24, 2009, the grand jury in this district returned a two count indictment alleging that on March 3, 2009 Comfort T. Johnson ("Johnson") possessed a firearm after having been convicted of a felony, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (Count 1), and possessed with intent to distribute more than 5 grams of crack cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) (Count 2). (Docket No. 1.)

On May 7, 2009, Johnson filed a motion to suppress evidence seized pursuant to a search warrant issued by a Milwaukee County Court Commissioner on February 27, 2009. (Docket No. 10.) The government has responded. (Docket No. 14.) Johnson has not replied. The pleadings on the defendant's motion to suppress are closed and the matter is ready for resolution.

On February 27, 2009, at 2:31 PM, a Milwaukee County Court Commissioner issued a search warrant for Johnson's residence. (Docket No. 10 at 1.) The warrant was executed on March 3, 2009 at 10:58 AM. (Docket No. 10 at 1.) Johnson contends that in this intervening time, probable cause to search the residence dissipated. (Docket No. 10 at 2.)

**ANALYSIS**

The facts presented in the affidavit are simple and straightforward. Within 72 hours before the application of the search warrant, Milwaukee Police utilized an informant to conduct a controlled buy of crack cocaine from the target residence. Although the warrant commands that the search warrant be executed "forthwith," (Docket No. 14-2 at 1), for whatever reason, law enforcement waited nearly four days to execute the search warrant. Thus, it may have been nearly seven days since the controlled buy when law enforcement finally executed the search warrant.

The court acknowledges that there are certain deficiencies in the affidavit submitted in support of the search warrant. To begin with, the present affidavit is clearly a "fill-in-the-blank" affidavit. For example, each page contains a footer stating "(Revised 10/20/05)." Further, paragraph 11 states the following, much of which would have been nonsensical to include if it had not already been written into a standard form:

> That affiant believes that the informant is a credible person because affiant knows that the informant, while working with law enforcement in the capacity of an informant, previously has made two successful "buys" of controlled substances for law enforcement officers; that none of these buys have led to search warrants that led to the seizure of evidence of drug trafficking on none occasions and ultimately led to criminal charges being filed against none individuals and that of those individuals, none have been convicted of drug crimes and no cases are pending; and that affiant also believes that the informant is a credible person because the informant has given affiant and other law enforcement officers information concerning drug trafficking in the Milwaukee area which affiant and other law enforcement officer have been able to confirm by reviewing controlled substances intelligent [sic] filed in the offices of law enforcement agencies;

(Docket No. 14-3 at ¶11.)

The errors in grammar regarding the use of the word "none" aside, it goes without saying that if the informant's information did not result in any arrests, there were no resulting convictions and no pending cases. In other words, what paragraph 11 actually states is that the limited prior experience law enforcement has had with this informant has produced nothing of value. How this affects the reliability of the informant will be discussed later.

2

In another case that initially came before this court and involved a similar fill-in-the-blank search warrant coming out of Milwaukee County Circuit Court, the Seventh Circuit explicitly cautioned against the use of such fill in the blank affidavits. United States v. Garcia, 528 F.3d 481, 483 (7th Cir. 2008) ("The affidavit was of the 'fill-in-the-blanks' variety (which, we were troubled to hear, is regularly used in Milwaukee County) . . . ."); see also United States v. Walker, 2008 U.S. Dist. LEXIS 4808 at *13 (E.D. Wis. Jan. 23, 2008) (noting concern over the apparent use of boilerplate language in affidavits from the Racine Police Department).

> Although an affidavit is not invalid to support a search warrant simply because it has a preprinted format, a pre-prepared affidavit leads to errors and omissions. . . . We understand why officers may wish to employ a shortcut when applying for warrants. But we caution that this practice may ultimately result in evidence suppression at trial. Thus, it is with some reservation that we conclude that the state court commissioner did not err in issuing the warrant in this case.

Id. at 486 (internal quotation marks, brackets, and citation omitted).

The pre-printed form at issue in Garcia was literally a fill-in-the-blank affidavit. There were lines followed by parenthetical instructions as to what was to be placed on those lines. (See 06-CR-292, Docket No. 14). In the present case, the fill-in-the-blank nature is better disguised through the use of word processing technology; gone are the explicit lines and parenthetical instructions. But the awkward phrasing and intentionally vague boilerplate information that is clearly designed to be non-specific enough to fit almost every situation remains.

It is not the reuse of standard language per se that is concerning to the court, see id.; certain preliminary phrases or even paragraphs might be readily subject to reuse in a wide variety of search warrants (and it must be acknowledged that courts and attorneys also frequently reuse boilerplate language). Thus, better disguising the recycling of standardized affidavits through more attentive cutting and pasting is not the answer to the court's concerns. Even if there was nothing in this affidavit directly indicating that it was created with the use of a standardized form, this affidavit would be the subject of some concern for this court.

3

For example, there is no reference to the amount of crack cocaine purchased. Ambiguous references to a "quantity of cocaine," or "some money" used to purchase to cocaine, (Docket No. 14-3 at 2, ¶¶5-6), are of little help to a judicial officer asked to determine whether it is likely for cocaine or related contraband or evidence to be found in a location days later. The quantity of controlled substance observed is particularly relevant when significant time has elapsed between the observation and the application for the warrant. See Owens v. United States, 387 F.3d 607, 608 (7th Cir. 2004). A small time crack dealer who on one occasion sold a small rock to a friend is far less likely to possess any contraband days later than a large scale cocaine dealer who moves kilogram quantities of cocaine on a weekly basis or a midlevel dealer who is known to cook cocaine into crack in his residence. See id.

Further, the affidavit failed to establish the reliability of the informant. Such information is essential because a judicial officer should generally be suspicious of information provided by an informant. See United States v. Peck, 317 F.3d 754, 758 (7th Cir. 2003) ("[M]ost CIs have a bias against the defendant or something to gain from their statement."). Although much of the informant's information was corroborated by law enforcement in that it came as part of a controlled buy that was supervised from law enforcement, there is no information to establish the informant's reliability with respect to the assertion that the informant observed a "quantity of cocaine" and a handgun in the kitchen of the residence within the last 14 days. Completely absent are any details with respect to this alleged observation, for example, a description of the firearm or details of the interior of the residence. Rather, the affidavit indicates that the informant has relatively little familiarity with the target location in that he was not able to provide a name, not even a street name, of the individual who allegedly provided him with the "quantity of cocaine," but rather was able to offer only a general description of a "Black male, 20-30yrs old, 5'11", 240 lbs., Black hair in a ponytail."

4

As for the affiant's final effort to establish the reliability of the informant set forth in paragraph 11 of the affidavit, as mentioned earlier, the court finds this information to be of little value. The fact that the informant engaged in two prior purchases of controlled substances which resulted in no evidence being seized, nor any charges or convictions, says nothing positive of the informant's overall reliability. In fact, without more detail, it might be viewed as a negative regarding reliability. The court also finds the following boilerplate assertion insufficient to indicate the reliability of the informant:

> that affiant also believes that the informant is a credible person because the informant has given affiant and other law enforcement officers information concerning drug trafficking in the Milwaukee area which affiant and other law enforcement officer have been able to confirm by reviewing controlled substances intelligent [sic] filed in the offices of law enforcement agencies

(Docket No. 14-3 at 3, ¶11.)

Such a statement is simply too general. Any person who watches local news would be able to provide information about drug trafficking in the Milwaukee area that could be verified by law enforcement. Without details as to the nature of the information was provided, the mere fact that information was provided does not demonstrate the credibility of the informant's information. Reliability of an informant is demonstrated in the details of an informant's information and prior history with law enforcement and thus is unlikely to be established through ambiguous boilerplate paragraphs.

These concerns aside, Johnson's contention is a narrow one. He contends only that the delay in executing the search warrant resulted in a deterioration of probable cause; he implicitly concedes that probable cause existed when the search warrant was issued. In light of the Seventh Circuit's conclusion that probable cause existed in <u>Garcia</u>, a search warrant that this court regards as being more deficient than the one presented here, if Johnson had raised the issue, the court would conclude that probable cause existed when the search warrant was issued.

5

Thus, turning to the question of the delay in execution, "[i]t is generally accepted . . . that a warrant need only be executed within a reasonable time after its issuance, notwithstanding the presence of 'forthwith' language in the warrant." United States v. Bedford, 519 F.2d 650, 655 (3d Cir. 1975). When the execution of a search warrant is delayed, a reviewing court does not apply "a mechanical test with regard to the number of days from issuance, nor whether any cause for delay was per se reasonable or unreasonable. Rather [the question is] whether probable cause still existed at the time the warrant was executed." Id.; see also, e.g., United States v. Marin-Buitrago, 734 F.2d 889, 894 (2d Cir. 1984) (citing United States v. Lemmons, 527 F.2d 662, 664 (6th Cir. 1975); United States v. Dunnings, 425 F.2d 836, 841 (2d Cir. 1969)).

Because the quantity of cocaine is not described, the court must presume that it was a minimal amount. See Owens, 387 F.3d at 608. Although the court might be able to look to the allegation that the informant saw a quantity of cocaine in the target residence on a separate location two weeks earlier to conclude that the residence is involved in an ongoing distribution of controlled substances and this was not a one-time drug sale, in light of the affiant's near-complete failure to establish the reliability of informant or the basis of the informant's knowledge, this allegation carries little weight with the court.

A week is a long time to wait to search for evidence following the sale of what the court must presume to be a minimal amount of crack cocaine. In such time, it is reasonable to infer that small amounts of controlled substances would be long gone, either sold or consumed. Absent evidence of an ongoing operation, there would not be reason to suspect that those controlled substances would be replaced.

However, it is important to remember that the present search warrant was issued as the result of a controlled buy that occurred in the target residence. This was not a search warrant issued based upon an informant's assertion that contraband was in the residence, as was the case in Garcia. In a

6

case such as Garcia, the foremost issue is whether the contraband is likely to be in the target location at the time the search warrant is executed. In the present case, it is not just a question of whether additional contraband is likely to be found in the residence but whether evidence of the crime that police believe occurred in the target location, i.e. delivery of controlled substances, is likely to be found in the target location, perhaps as much as a week after the controlled buy.

Although small amounts of controlled substances may be sold or consumed in a week, other items that would constitute evidence of the crime of delivery of controlled substances, for example records indicating who is in control of the premises or packaging materials or paraphernalia, are likely to be found in the residence a week after the controlled buy. Johnson does not raise any objection to the scope of the search, and therefore the court shall not consider this issue further. Thus, it is the conclusion that probable cause continued to exist at the time the search warrant was executed.

**IT IS THEREFORE RECOMMENDED** that Johnson's motion to suppress, (Docket No. 10), be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 29th day of May 2009.

s/AARON E. GOODSTEIN  
U.S. Magistrate Judge